UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WENDY J. HOWELL,<br><br>        Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | )<br>)  No. CV-04-5113-CI<br>)<br>)  ORDER DENYING PLAINTIFF'S<br>)  MOTION FOR SUMMARY JUDGMENT<br>)  AND GRANTING JUDGMENT FOR<br>)  DEFENDANT<br>)<br>)<br>)<br>)<br>)<br>) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 20), submitted for disposition without oral argument on June 6, 2005.  Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Thomas M. Elsberry represents Defendant.   The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 7.)  After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and enters judgment for Defendant.

Plaintiff, who was 37-years-old at the time of the administrative decision, filed an application for Social Security disability benefits on February 5, 1998, alleging onset as of January 10, 1998, due to fibromyalgia, allergies, anxiety and depression. (Tr. at 19.)  Plaintiff had a high school education and

past work experience as an office clerk/receptionist, service writer, laundry clerk, certified nursing assistant, housekeeper, salad prep supervisor, hostess, and front desk clerk. (Tr. at 64, 270.) Following a denial of benefits and reconsideration, a hearing was held before ALJ Edward Nichols. The ALJ denied benefits; review was granted by the Appeals Council and the cause remanded for consideration of new evidence of cervical impairment. Following a second administrative hearing, the ALJ denied benefits. Review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

### ADMINISTRATIVE DECISION

The ALJ concluded at the second hearing that Plaintiff had not engaged in substantial gainful activity and that her date of last insured expired March 31, 2000. Plaintiff had severe impairments, including residuals for cervical surgical repair of disc herniation and a history of fibromyalgia, but those impairments were not found to meet the Listings. Mental impairments, including anxiety and depression, were found to be non-severe. (Tr. at 20.) Plaintiff's residual capacity was found to permit her to perform sedentary work; the ALJ concluded past work as an office clerk and receptionist was not precluded by this limitation. (Tr. at 24.) Alternatively, a vocational expert testified she could perform other work, including phone sales, surveillance systems monitor, or agricultural sorter. Thus, the ALJ concluded Plaintiff was not disabled.

### ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff

1  asserts the ALJ erred when he (1) improperly rejected the findings

2  and opinions of two treating physicians and lay witnesses; and (2)

3  performed an inadequate step four analysis.

4                          **STANDARD OF REVIEW**

5      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

6  court set out the standard of review:

7      > The decision of the Commissioner may be reversed only if
       > it is not supported by substantial evidence or if it is
8      > based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
       > 1097 (9th Cir. 1999). Substantial evidence is defined as
9      > being more than a mere scintilla, but less than a
       > preponderance. *Id.* at 1098. Put another way, substantial
10     > evidence is such relevant evidence as a reasonable mind
       > might accept as adequate to support a conclusion.
11     > *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
       > evidence is susceptible to more than one rational
12     > interpretation, the court may not substitute its judgment
       > for that of the Commissioner. *Tackett*, 180 F.3d at 1097;
13     > *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599
       > (9th Cir. 1999).

14
15     > The ALJ is responsible for determining credibility,
       > resolving conflicts in medical testimony, and resolving
16     > ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
       > Cir. 1995).  The ALJ's determinations of law are reviewed
17     > *de novo*, although deference is owed to a reasonable
       > construction of the applicable statutes. *McNatt v. Apfel*,
18     > 201 F.3d 1084, 1087 (9th Cir. 2000).

19                          **SEQUENTIAL PROCESS**

20     Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

21 requirements necessary to establish disability:

22     > Under the Social Security Act, individuals who are
       > "under a disability" are eligible to receive benefits. 42
23     > U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
       > medically determinable physical or mental impairment"
24     > which prevents one from engaging "in any substantial
       > gainful activity" and is expected to result in death or
25     > last "for a continuous period of not less than 12 months."
       > 42 U.S.C. § 423(d)(1)(A). Such an impairment must result
26     > from "anatomical, physiological, or psychological
       > abnormalities which are demonstrable by medically
27     > acceptable clinical and laboratory diagnostic techniques."
       > 42 U.S.C. § 423(d)(3). The Act also provides that a
28     > claimant will be eligible for benefits only if his

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING JUDGMENT FOR DEFENDANT - 3

impairments "are of such severity that he is not only
unable to do his previous work but cannot, considering his
age, education and work experience, engage in any other
kind of substantial gainful work which exists in the
national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus,
the definition of disability consists of both medical and
vocational components.

    In evaluating whether a claimant suffers from a
disability, an ALJ must apply a five-step sequential
inquiry addressing both components of the definition,
until a question is answered affirmatively or negatively
in such a way that an ultimate determination can be made.
20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
claimant bears the burden of proving that [s]he is
disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
1999). This requires the presentation of "complete and
detailed objective medical reports of h[is] condition from
licensed medical professionals." *Id*. (citing 20 C.F.R. §§
404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1.  <u>Opinions of Treating Physicians</u>

    Plaintiff contends the ALJ improperly rejected the opinions of

treating physicians Drs. Brandt and Eider without providing

sufficient reasons supported by the record. Both doctors concluded

at various times Plaintiff was disabled (1998 (Eider), 1999 (Eider

and Brandt), 2003 (Brandt)). (Tr. at 209, 234, 541.) Additionally,

Plaintiff contends the ALJ improperly rejected Plaintiff's spouse's

testimony without providing sufficient reasons, including testimony

that Plaintiff could not sit for more than 20 minutes, precluding

work as a receptionist/clerk.

    The ALJ concluded Plaintiff had a history of severe

fibromyalgia and status post-surgical repair of cervical disc

herniation. (Tr. at 20.) Mental impairments were found to be non-

severe. The ALJ additionally noted Plaintiff had a second cervical

disc surgery in December 2001, but this treatment was well beyond

her date of last insured of March 31, 2000. (Tr. at 21.) In his

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING JUDGMENT FOR DEFENDANT - 4

1   first opinion, the ALJ rejected Dr. Eider's conclusion as to

2   disability because the diagnosis of fibromyalgia was not based on

3   objective findings and Dr. Eider saw Plaintiff only on an infrequent

4   basis. (Tr. at 283.)  Additionally, the ALJ relied on the findings

5   of treating physician Dr. Gondo, who opined Plaintiff should be

6   exercising and working notwithstanding any diagnosis of fibromyalgia

7   (which he noted had not been substantiated with objective findings).

8   (Tr. at 283.)

9        The ALJ, in his second opinion, noted the following:

10       No treating or examining physician stated or implied prior
         to March 31, 2000 that the claimant was totally
11       incapacitated.    Neither were specific work-related
         limitations assessed which are more restrictive than those
12       established in this decision.  The claimant does not take
         particularly strong doses of pain medication, and did not
13       complain of severe side-effects during the period relevant
         to this decision.  Despite her subsequent surgery, there
14       was no objective evidence of muscle atrophy prior to March
         31, 2000, or severe and persistent muscle spasms or
15       inflammation (heat, redness, swelling, etc.).  . . .

16       . . .

17       Dr. Brandt, a treating source, has provided two opinions
         which on their face appear to support a less than
18       sedentary capacity prior to March 31, 2000.  Ordinarily,
         a treating physician's medical opinion on the issue of the
19       nature and severity of an impairment, is entitled to
         special significance.    However, I find Dr. Brandt's
20       opinions to be conclusory and brief, and inconsistent with
         his own notations and other evidence in the record.
21
         Dr. Brandt first opined in September 2000 that the
22       claimant was disabled since March 2000 and that she did
         not have fibromyalgia.  This was during the period when
23       the claimant said she was fine and told him so.  Notably,
         Dr. Thomas, who performed the surgery, placed no limits on
24       the claimant, and Dr. Brandt had to have relied on Dr.
         Thomas' notes to make any decisions.  As such, I give
25       little weight to his hastily scribbled opinion.  As if his
         actions were not already suspect as those of advocate
26       rather than dispassionate physician, he again indicates on
         May 21, 2003 following the second fusion that she has been
27       disabled since 1999 (before it was March 2000) due to the
         cervical condition, fibromyalgia, and fatigue.  This,
28       despite that he discounted fibromyalgia in his previous

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING JUDGMENT FOR DEFENDANT - 5

form and indicates in his notes that it was cured.  This really is an opinion of accommodation, and will be accorded no weight.

(Tr. at 22-24, references to exhibits omitted.)

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.  While a treating physician's uncontradicted medical opinion will not receive "controlling weight" unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Social Security Ruling 96-2p, it can nonetheless be rejected only for "'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with clear and convincing reasons. *Holohan*, 246 F.3d at 1202-03.  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective

complaints of pain, as specific, legitimate reasons for disregarding
the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64;
*Fair*, 885 F.2d at 604. The ALJ's findings were legitimate and
specific and supported by the record.

Although Dr. Eider diagnosed fibromyalgia in 1998, there are no
objective findings to support that diagnosis, other than self-
reported complaints. (Tr. at 208.) An absence of trigger points of
pain was reported in 1999. (Tr. at 226.) Following the first
cervical fusion in March 2000, Dr. Brandt reported Plaintiff's
prognosis was good and she was non-symptomatic. (Tr. at 248.) In
August 2000, Plaintiff reported to him that she was "completely
cured of fibromyalgia" and was looking forward to starting work
again. (Tr. at 250.) Thus, there is no evidence Plaintiff was
disabled prior to the date of last insured. Finally, surgeon Dr.
Thomas did not assess any limitations. He noted motor strength was
5/5 with no radicular signs or symptoms and that she was fusing
well. Dr. Thomas further noted Plaintiff reported no neck pain or
neurological deficits and was "happy as a clam." (Tr. at 421.)

Plaintiff also contends the ALJ ignored the statements of
Plaintiff's spouse, made in May 2003, that she no longer appeared
depressed but that she continued to have pain in her arms and hands
following the second surgery. (Tr. at 22, 593-94.) This statement
is not relevant to Plaintiff's condition prior to date of last
insured (March 31, 2000), as noted by the ALJ. (Tr. at 23.) This
reason is specific to this witness's statement and provides a
legitimate reason for rejecting it. *Nguyen v. Chater*, 100 F.3d
1462, 1467 (9th Cir. 1996), citing *Dodrill v. Shalala*, 12 F.3d 915,
919 (9th Cir. 1993).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING JUDGMENT FOR DEFENDANT - 7

2.   <u>Step Four Analysis</u>

Plaintiff contends the ALJ did not adequately analyze her past prior work in light of her residual functional capacity, as required by Social Security Ruling 82-62.  Although the ALJ determined she retained the ability to perform sedentary work, Plaintiff contends the ALJ did not cite specific medical facts to support his conclusion.  Additionally, she contends the ALJ did not make specific findings regarding the physical and mental demands of her prior work as a receptionist and did not compare the two areas.  Finally, Plaintiff contends the ALJ ignored the testimony of the vocational expert, who concluded Plaintiff would not be able to work in light of the impairments included by the ALJ in the hypothetical.  (Tr. at 600.)

To the extent there was a failure to conduct a proper step four analysis, the error is harmless in light of the vocational expert's testimony and findings at step five.  *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1991) (whether findings of fact are supported by substantial evidence or the law was correctly applied by the ALJ are questions subject to the harmless error standard).  The medical consultant stated Plaintiff would have postural limitations including repetitive bending, stooping, twisting, and working overhead.  Additionally, she should avoid lifting in excess of 25-30 pounds.  (Tr. at 597.)  These limitations are consistent with the residual functional capacity assessment by a second consultant dated August 7, 2001 (light work, postural limitations and limited reaching in all directions). (Tr. at 452.)  In his hypothetical to the vocational expert, the ALJ limited Plaintiff to sedentary work with an option for some change of position as needed and limited

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING JUDGMENT FOR DEFENDANT - 8

overhead reaching. (Tr. at 599.) Based on these limitations, the vocational expert concluded Plaintiff could work as a surveillance system monitor, telephone sales representative, fruit distributor, or agricultural sorter. (Tr. at 600-602.) During cross-examination, the vocational expert testified if Plaintiff missed one or more days of work per week or needed to lie down during the workday she would not be employable. (Tr. at 610.) However, following Plaintiff's first cervical surgery, there is no evidence such limitations were supported by objective medical findings. It may be that such limitations exist following the second surgery, but that would not be germane to the instant disability application in light of the March 31, 2000, date of last insured. Accordingly,

**IT IS ORDERED**:

1.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

2.    Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 20)** is **GRANTED**; Plaintiff's Complaint and claims are **DISMISSED WITH PREJUDICE.**

3.    The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED June 8, 2005.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE


ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING JUDGMENT FOR DEFENDANT - 9